UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES D. KASPER,

        Petitioner,

vs.                                            Case No.:    3:15-cv-86-J-32PDB
                                                                                3:13-cr-60-J-32PDB

UNITED STATES OF AMERICA,

        Respondent.
_____/

## ORDER

This case is before the Court on Petitioner James D. Kasper's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) and Supporting Memorandum (Civ. Doc. 2, Civ. Doc. 2-1, Civ. Doc. 2-2) (collectively "Pet. Mem.").[1] The United States has responded (Civ. Doc. 5), and Petitioner has replied (Civ. Doc. 6). Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that

---

[1] References to the docket in the underlying criminal case, United States vs. James D. Kasper, Case No. 3:13-cr-60-J-32PDB, will be denoted as "Crim. Doc. __." Citations to the civil § 2255 docket, Case No. 3:15-cv-86-J-32PDB, will be denoted as "Civ. Doc. __."

1

the facts he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Petitioner's Motion to Vacate is due to be denied.

I.     **Background**

On March 28, 2013, a federal grand jury indicted Petitioner on one count of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e). (Crim. Doc. 15, Indictment). Petitioner pled guilty to the charge under a written plea agreement. (Crim. Doc. 50, Plea Agreement). Petitioner admitted to the following facts in his Plea Agreement and at the change of plea hearing. (See Crim. Doc. 50 at 16-19; Crim. Doc. 76 at 19-24).

In February 2013, law enforcement officers in Tennessee arrested a registered sex offender on child pornography charges. Further investigation of that offender's emails eventually led law enforcement to discover emails between a second user, the "A account," and a third user identified as the "ghostt4891" account, which belonged to Petitioner. Between February 3, 2013 and February 4, 2013, the A account and Petitioner exchanged emails in which the two traded images of child pornography.

On February 3, 2013, the A account sent an email to Petitioner with the subject line "trade." Attached to this email was an image of a prepubescent female wearing a t-shirt and underwear. On February 4, 2013, Petitioner sent an email to the A account that stated "send the goods to get the goods." Attached to this email was an image depicting a close-up view of a prepubescent child's pubic area covered with green underwear. Later on February 4, 2013, the A account sent Petitioner two images depicting a prepubescent child displaying the child's genitalia. Later that day,

2

Petitioner sent a responsive email to the A account that had two attached digital images. Both images depicted the pubic area of a prepubescent child, with Petitioner's hand or finger visible and pulling the child's underwear to one side exposing the child's genitalia. Petitioner produced the two images, among others, on May 27, 2012, using his Apple iPhone. Further investigation revealed that Petitioner had uploaded these images, along with at least nine others depicting the same child displaying her genitalia, to a website whose server was located outside the United States.

On March 20, 2013, FBI agents and other law enforcement officers executed a search warrant at Petitioner's residence in Jacksonville, Florida. During this search, the agents seized a laptop computer and a four gigabyte thumb drive. Meanwhile, two agents met Petitioner at his place of employment in Jacksonville. Petitioner agreed to speak with the agents and admitted that he owned the "ghostt4891" account. Petitioner stated that he had used the "ghostt4891" account to receive images of child pornography from other individuals. Upon being shown the two pornographic images of the child wearing the green underwear, Petitioner hung his head, hid his face, and said "you already know." Petitioner stated that he had used his iPhone to create the images while babysitting a 9 year old minor. After taking the photographs of the child, Petitioner uploaded the images to a particular website and sent those pictures via email. Petitioner admitted that he later gratified himself while viewing the images and thinking about the incident.

Petitioner acknowledged that child pornography is harmful to the child, and he stated that he had struggled off and on with child pornography for the past 10 years.

3

Petitioner admitted that his actions were illegal and morally wrong. Petitioner recalled using a peer-to-peer file sharing program in the past to search for child pornography, and he stated that he had "probably" used such search terms as "pthc" ("preteen hardcore") and "pedo" in the past. Petitioner further told the officers that he agreed that the images he created constituted child pornography.

Forensic analysis of Petitioner's computer revealed the presence of 12 images of child pornography, while the thumb drive held another "641 images produced by Kasper depicting the prepubescent child at various stages of the production process." (Crim. Doc. 50 at 19). Altogether, "at least 49 of these images depicted the minor victim's genitalia and part of Kasper's hand pulling the child's underwear aside." (Id.).

At his plea hearing, Petitioner admitted that the foregoing factual basis was true and accurate (taking issue only with the calculation of 641 separate images for sentencing purposes). (Crim. Doc. 76 at 24). Having been advised of the elements of producing child pornography and of the potential penalties (id. at 11-13), he acknowledged that his conduct satisfied the elements of the offense and that he was guilty (id. at 18, 24). Petitioner affirmed that his guilty plea was knowing and voluntary, and that it was not the result of any promises, threats, or coercion. (Id. at 25). With respect to the written plea agreement, Petitioner assured the Court that he had read the document and that his attorney had reviewed it with him. (Id. at 13-14). When the Court explained various provisions of the plea agreement – including a provision by which Petitioner waived the right to appeal his sentence (id. at 17-18) – Petitioner indicated his understanding and acceptance of those provisions. Petitioner

4

confirmed one final time that it was his desire to plead guilty, and the Court accepted his plea. (Id. at 27-28).

At his sentencing hearing, the Court calculated Petitioner's Criminal History Category under the United States Sentencing Guidelines to be Category I, and his total offense level to be 39, yielding an advisory sentencing range of 262 to 327 months in prison. (Crim. Doc. 77, Sentencing Transcript at 23). The total offense level included a two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A) because the crime involved sexual contact, an issue that was contested at sentencing. (See id. at 17-21). Ultimately, the Court varied below the Guidelines range and sentenced Petitioner to a term of 240 months in prison, followed by a 20-year term of supervised release. (Id. at 81-82).

Petitioner appealed his sentence, but the Eleventh Circuit Court of Appeals dismissed the challenge. (Crim. Doc. 78, USCA Order). The court concluded that Petitioner entered into a knowing and voluntary sentence-appeal waiver, and thus that the appeal was barred. Petitioner did not request certiorari review, and his conviction and sentence became final.

Petitioner timely filed the instant Motion to Vacate. Petitioner raises three claims of ineffective assistance of counsel, which are discussed below.

**II.    Discussion**

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation

5

of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient

performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Ground One

As his first ground, Petitioner claims that counsel, Alan Rosner, gave ineffective assistance by not moving to withdraw his guilty plea. (Civ. Doc. 1 at 4; Pet. Mem. at 10-17).[2] After he pled guilty, Petitioner wrote counsel to tell him he was "seriously thinking about asking [counsel] to withdraw [his] unconditional guilty plea." (Civ. Doc. 2-3 at 1). Petitioner believed (as he does now) that the factual basis was insufficient to establish a violation of 18 U.S.C. § 2251(a). (See Civ. Doc. 2-3). Specifically, Petitioner thinks that the photographs he took of the victim's genitalia did not constitute child pornography because, in essence, the victim was asleep at the time and therefore could not have demonstrated a willingness to engage in sexually explicit conduct.

At the outset, although Petitioner told counsel he was "seriously thinking" about asking counsel to withdraw his guilty plea, there is no indication that he ultimately requested counsel to do so. Moreover, at the sentencing hearing, which

---

[2] References to Petitioner's Supporting Memorandum ("Pet. Mem.") are to the page number handwritten at the bottom of the brief.

7

post-dated his letter to counsel, Petitioner apologized for his conduct, expressed remorse, and in no way suggested that he had wanted to withdraw his plea. (Crim. Doc. 77, Sentencing Transcript at 66-67). Indeed, counsel stated that after having a lengthy discussion with Petitioner about the charges and the evidence, Petitioner wanted to plead guilty and accept responsibility, and Petitioner deliberately forewent filing a motion to suppress. (Id. at 53-55). Petitioner now seems to repeat the sentiments of his mother – who suggested at the sentencing hearing that Petitioner was not guilty of the charge to which he pled (id. at 57-62) – but Petitioner did not embrace those sentiments given his turn to speak at the sentencing hearing.

Nevertheless, even assuming Petitioner asked counsel to withdraw his plea, counsel did not perform deficiently or prejudicially by not doing so. Had Petitioner requested to withdraw his guilty plea, the request would have lacked merit in light of the record of the thorough plea colloquy. Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a court may, before sentencing, allow a defendant to withdraw his guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." While the rule is liberally construed, a defendant does not have an absolute right to withdraw his guilty plea before sentencing. United States v. Buckles, 843 F.2d 469, 471 (11th Cir. 1988).[3] Rather, a court considers the totality of the circumstances surrounding the entry of the plea in determining whether a defendant has met his burden of showing a "fair and just reason" for withdrawal. Id. at

---

[3] In Buckles, the Eleventh Circuit interpreted former Rule 32(d), which is now found at Rule 11(d) (pre-sentence withdrawal of guilty plea) and 11(e) (post-sentence withdrawal of guilty plea). See 2002 Advisory Committee Notes to Fed. R. Crim. P. 11.

8

472. The Eleventh Circuit has identified four factors to consider: "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Id. However, if the first two factors weigh against the defendant, a court need not give particular attention to the last two factors. See United States v. Gonzalez-Mercado, 808 F.2d 796, 801 (11th Cir. 1987); see also United States v. Kirksey, 283 F. App'x 714, 715 (11th Cir. 2008).

Additionally, a court must determine that the core concerns of Rule 11 have been met. Specifically, "(1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea." United States v. Freixas, 332 F.3d 1314, 1318 (11th Cir. 2003) (quoting United States v. Lejarde-Rada, 319 F.3d 1288, 1289 (11th Cir. 2003)). In considering the identified factors, the Court must evaluate "[t]he good faith, credibility, and weight of a defendant's assertions in support of a motion" to withdraw a plea of guilty. United States v. Bing, 387 F. App'x 896, 898 (11th Cir. 2010) (internal quotation marks omitted).

In light of these factors, Petitioner would not have shown a fair and just reason for withdrawing his plea. First, Petitioner pled guilty with the close assistance of skilled counsel, whom the Court described as "one of the most well-known and best-recognized criminal defense lawyers" and "well-experienced." (Crim. Doc. 77 at 79-80). Counsel advised Petitioner extensively before he pled guilty (see id. at 53), and

9

Petitioner stated during the plea hearing that he was satisfied with counsel's representation (Crim. Doc. 76 at 26). Second, the record of the plea colloquy shows that Petitioner was thoroughly advised of his rights, the charge, and of the consequences of pleading guilty (id. at 7-18), that he understood the factual basis (id. at 19-24), and that his decision to admit guilt was well-informed and free of coercion (id. at 24-25, 27-28). Thus, not only was his guilty plea "knowing and voluntary," Buckles, 843 F.2d at 472, but it also satisfied the core concerns of Fed. R. Crim. P. 11, Freixas, 332 F.3d at 1318. Although it is unclear how allowing Petitioner to withdraw his plea would have affected judicial resources or prejudiced the prosecution, these factors do not warrant significant attention in light of the first two factors. Gonzalez-Mercado, 808 F.2d at 801.

Moreover, Petitioner's reason for wanting to withdraw his guilty plea – i.e., his belief that the factual basis did not establish that the pictures he took were pornographic – is frivolous. According to the factual basis, the pictures showed Petitioner pushing the victim's underwear to one side to expose her genitalia; Petitioner gratified himself to these images; and he traded them with another person for additional images of child pornography. (See Crim. Doc. 50 at 16-19). Thus, the images clearly were designed to arouse the lascivious interests of a pedophile. That the victim was asleep and did not demonstrate a willingness to participate in sexual activity in no way precludes the images from qualifying as child pornography. Indeed, the Eleventh Circuit has held that images focusing on a minor's exposed pubic area, such as those here, may qualify as "a lascivious exhibition" even if the minor is

unaware that she is being filmed or photographed. United States v. Holmes, 814 F.3d 1246, 1252 (11th Cir. 2016). Likewise, other courts have rejected Petitioner's very argument that images are not pornographic if they are taken while the victim is asleep. United States v. Finley, 726 F.3d 483, 494-95 (3d Cir. 2013) (holding that 18 U.S.C. § 2251(a) encompasses images taken of sleeping children); United States v. Levy, 594 F. Supp. 2d 427, 443 (S.D.N.Y. 2009) ("[B]oth as a matter of language and logic, [18 U.S.C. § 2251(a)] clearly encompasses the sexual exploitation of a sleeping child."). Moreover, that the minor victim was asleep while she was photographed can be an aggravating factor, not something that establishes innocence. United States v. Kapordelis, 569 F.3d 1291, 1315-16 (11th Cir. 2009) (that minor victims were asleep when defendant photographed them was basis for vulnerable victim sentencing enhancement). As such, Petitioner's reasons for wanting to withdraw his guilty plea were misplaced and entitled to little weight. See Bing, 387 F. App'x at 898.

Accordingly, had Petitioner moved to withdraw his guilty plea, the motion would have lacked merit. Because an attorney does not give ineffective assistance by failing to file a meritless motion, Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989), Ground One is due to be denied.

**B. Ground Two**

As his second ground, Petitioner claims that counsel gave ineffective assistance by failing to advise him that he could have entered into an "open guilty plea" without a plea agreement and a sentence-appeal waiver. (Civ. Doc. 1 at 4; Pet. Mem. at 18-20). Petitioner claims that had counsel advised him of this option, he would have

11

"considered" entering an open plea. (Pet. Mem. at 18). Petitioner complains that the plea agreement only benefited the government and deprived him of the right to appeal. (Id. at 19). Had he entered an open plea, he suggests he would have appealed (1) the sufficiency of the factual basis, and (2) the sentencing enhancement for having sexual contact with the minor. (See id. at 19-20).

Strickland's two-part standard for ineffective assistance of counsel applies to claims arising from the plea process. Hill v. Lockhart, 474 U.S. 52, 58 (1985). A petitioner must show that (1) counsel's advice "fell below an objective standard of reasonableness," id. at 57, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the plea process would have been different, id. at 59. In this context, where counsel allegedly failed to advise the defendant of the option to enter an open plea, to establish prejudice the petitioner must show a reasonable probability that: (1) he would have pled guilty "straight up"; (2) the Court would have accepted the open plea; (3) the defendant would have appealed the sentence; and (4) the defendant's sentence after the appeal "would have been less severe than under the judgment and sentence that in fact were imposed." Taylor v. United States, No. 16–12138–K, 2017 WL 5202358, at *3 (11th Cir. Aug. 18, 2017) (opinion denying certificate of appealability) (quoting Lafler v. Cooper, 132 S. Ct. 1376, 1384-85 (2012)).

Assuming for the sake of argument that counsel did not advise Petitioner of the ability to enter an open plea, he has not carried his burden of establishing prejudice. Petitioner's allegations are insufficient as a matter of law to show that the outcome

12

would have been different. To demonstrate prejudice under these circumstances, Petitioner must have alleged that he actually would have entered an open guilty plea. See Rosin v. United States, 786 F.3d 873, 878 (11th Cir. 2015) (petitioner failed to show he was prejudiced by attorney's misadvice about the length of his sentence because he did not allege that he actually would have pled guilty); Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (evidence of a defendant's willingness to enter a plea agreement, without proof that he actually would have accepted the offer, was insufficient to establish prejudice); Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) (petitioner did not establish prejudice from attorney's alleged failure to notify him of a plea offer where he did not allege that he actually would have accepted the offer). Here, Petitioner alleges only that he would have "considered entering an open plea" had counsel advised him of the possibility. (Pet. Mem. at 18) (emphasis added). Merely alleging that he would have "considered" an open plea, however, "is insufficient to show that the result of [Petitioner's] proceedings would have been different." Rosin, 786 F.3d at 878. Petitioner's assertion that he would have considered an open plea "assumes that he could have rejected such an [option] had one been extended." Id. Because Petitioner does not claim that he actually would have entered an open plea but for counsel's alleged deficiency, he has failed to show that the alleged error prejudiced him. Id. (citing Hill, 474 U.S. at 59; Coulter, 60 F.3d at 1504).

Moreover, the record refutes the suggestion that Petitioner would have rejected the plea offer and pled guilty without a plea agreement. The plea agreement protected Petitioner from additional charges, as the government "agree[d] not to charge

13

defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement[.]" (Crim. Doc. 50 at 3, ¶ A.4). Since the factual basis of Petitioner's plea agreement suggests that additional charges for receipt or distribution of child pornography were possible (see id. at 16-19), this guarantee was a tangible benefit to Petitioner. The government also promised to recommend a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and to move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b) if it determined that he qualified. (Id. at 3-4, ¶ A.5). This promise (which the government fulfilled) materially reduced Petitioner's Guidelines sentencing range, which would have been 360-months-to-life otherwise. See U.S.S.G. Sentencing Table (2013).[4] Although Petitioner did waive the right to appeal his sentence pursuant to the plea agreement, he knowingly and voluntarily accepted this trade-off (Crim. Doc. 76 at 17-18), even after acknowledging that his sentence could not be predicted and that he could be sentenced to the maximum of 30 years in prison (see id. at 9-11, 13). While Petitioner now complains he would like to have appealed the sexual contact enhancement, he could not have known that the enhancement would be applied to him when he decided to accept the plea agreement, and he knowingly assumed such a risk when he acknowledged during

---

[4] Petitioner's presentence investigation report (PSR) shows that he received a three-level downward adjustment under U.S.S.G. §§ 3E1.1(a) and (b). PSR at ¶¶ 31-32. Since his final Guidelines calculation was 39/ CHC I, without these reductions it would have been 42/ CHC I, which calls for a sentence of 360 months to life. Because the statutory maximum sentence for violating 18 U.S.C. § 2251(a) is 30 years, 360 months would have been his Guidelines sentence.

14

the plea colloquy that his Guidelines calculation could not be forecasted. Thus, the record shows that Petitioner knowingly and willingly accepted the plea agreement that the government offered him. Any suggestion that he would have rejected the plea offer in favor of an open plea – without the protections afforded by the plea agreement – is little more than self-serving speculation, which is insufficient to warrant relief. Chun Hei Lam v. United States, — F. App'x —, 2017 WL 5438867, at *3 (11th Cir. Nov. 14, 2017) (citing Diaz, 930 F.2d at 835).

Lastly, Petitioner has not satisfied Taylor's fourth prong, i.e., that had he entered an open guilty plea and appealed the sufficiency of the factual basis and the sexual contact enhancement, his "sentence after the appeal 'would have been less severe than under the judgment and sentence that in fact were imposed.'" Taylor, 2017 WL 5202358, at *3 (quoting Lafler, 132 S. Ct. at 1384-85). Petitioner points to no case law or authority that would have supported either of his arguments on appeal. It is only unsupported speculation whether Petitioner's sentence would have been less severe following direct review.[5] Therefore, the record and the allegations do not show that counsel's failure to advise Petitioner of the option to enter an open guilty plea prejudiced him. Relief on Ground Two is due to be denied.

---

[5] Indeed, even if the Eleventh Circuit had reversed the application of the sexual contact enhancement, Petitioner's Guidelines offense level would still have been 37 and his Criminal History Category would have been I, yielding an advisory sentencing range of 210-to-262 months in prison. Petitioner's 240-month sentence fell within the Guidelines range applicable even without the sexual contact enhancement.

**C. Ground Three**

Petitioner's final claim is that counsel was ineffective for not moving to suppress incriminating statements he made to two law enforcement officers who interviewed him at his jobsite. (Civ. Doc. 1 at 4; Pet. Mem. at 17-20). Petitioner claims that at one point during the interview, he asked the officers if he could leave. Petitioner admits that the officers told him he was free to go, but he argues that at that point, the officers should have informed him of his Miranda[6] rights. The officers did not do so, and Petitioner went on to give the officers several inculpatory statements. Petitioner argues that counsel should have moved to suppress those statements on the ground that his Fifth Amendment rights were violated. This claim lacks merit and is refuted by the record.

A prisoner can prove that counsel gave ineffective assistance if his lawyer unreasonably failed to move to suppress evidence. Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986).[7] To do so, the prisoner must show three things: (1) that a constitutional violation actually occurred, (2) that it was objectively unreasonable for counsel not to file the motion to suppress, and (3) that there is a reasonable probability the outcome would have been different absent the excludable evidence. See id. at 375, 382. If no constitutional violation occurred, then counsel is not obligated to move to suppress the evidence and a defendant is not prejudiced by counsel's failure to do so.

---

[6] Miranda v. Arizona, 384 U.S. 436 (1966).

[7] Kimmelman involved an attorney who failed to file a motion to suppress on Fourth Amendment grounds, not for a violation of Miranda and the Fifth Amendment. However, the Court sees no reason why the same framework would not apply.

See Castillo v. United States, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing Kimmelman, 477 U.S. at 375).

Here, the record demonstrates that Petitioner cannot satisfy the first two prongs. Petitioner's own supporting memorandum shows that no Miranda violation occurred because he was not in custody when he agreed to speak to the officers. Although the officers did not advise Petitioner of his Miranda rights, a suspect is not entitled to Miranda warnings for pre-custodial questioning. United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006). According to Petitioner's own memorandum, the officers interviewed him

> in the conference room at his place of employment. He was apprised as to the identity of the interviewing agents, that he was not under arrest, and that he was free to leave.
>
> As [sic] some point during the interview the Petitioner asked, "Am I free to go?" Special Agent Jonathan S. MacDonald told him twice that he was "free to go at anytime" and pointed to the door of the room. The Petitioner did not choose to leave and remained seated.

(Pet. Mem. at 22). Under these circumstances, a reasonable person in Petitioner's shoes would not "have understood his freedom of action to have been curtailed to a degree associated with formal arrest." United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010) (quotation omitted). Indeed, Petitioner admits that the questioning was non-custodial in nature. (Pet. Mem. at 21, 23). Thus, the officers were not required to administer Miranda warnings because Petitioner was not in custody. Since the record refutes the existence of a Miranda violation, counsel had no obligation to file a meritless motion to suppress. Castillo, 816 F.3d at 1303.

Additionally, the record shows that Petitioner himself decided not to file a motion to suppress. Near the beginning of the plea colloquy, counsel advised the Court that he had received correspondence from Petitioner indicating he would like to pursue a suppression issue. (Crim. Doc. 76 at 3). Counsel relayed that he had spoken with Petitioner about the issue, discussed "the various issues surrounding the statement," and had spoken to the government "and was able to receive some information from Agent MacDonald about the issue." (Id.). In the end, however, counsel stated that Petitioner "elected to actually waive that issue." (Id.). When the Court asked Petitioner if that was correct, Petitioner confirmed that it was. (Id.). Thus, the record reflects that counsel advised Petitioner about the merits of filing a motion to suppress, but Petitioner decided on his own not to pursue the matter. Counsel did not perform in an objectively unreasonable manner by following his client's well-informed decision not to file a suppression motion (which would have been meritless in any event). See Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Accordingly, relief on Ground Three is due to be denied.

Having considered each of Petitioner's claims for relief, and finding each one to lack merit, it is hereby **ORDERED:**

1. Petitioner James D. Kasper's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of January, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19
Copies:
Counsel of record
Pro se petitioner